IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diné Citizens Against Ruining Our Environment, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Bureau of Indian Affairs, et al.,<br><br>Defendants. | No. CV-16-08077-PCT-SPL<br><br>**ORDER** |

Before the Court is Intervenor-Defendant Navajo Transitional Energy Company's Motion to Dismiss. (Doc. 50.) For the reasons set forth below, Intervenor-Defendant Navajo Transitional Energy Company's Motion to Dismiss is granted.

**I. Background**

Plaintiffs Diné Citizens Against Ruining Our Environment ("Diné CARE"), San Juan Citizens Alliance, Sierra Club, the Center for Biological Diversity, and Amigos Bravos (collectively, "Citizens") have filed suit against the Bureau of Indian Affairs ("BIA"), United States Department of the Interior ("DOI"), the Office of Surface Mining, Reclamation and Enforcement ("OSMRE"), Bureau of Land Management ("BLM"), R.K. Zinke, in his official capacity as Secretary of the United States Department of the Interior, and the United States Fish and Wildlife Service ("FWS") (collectively, "Federal Defendants"). (Doc. 1.) Plaintiffs allege that Federal Defendants violated the Endangered Species Act ("ESA"), the National Environmental Policy Act ("NEPA"), and the Administrative Procedure Act ("APA") in the approval of: (1) a twenty-five year lease

extension for operation of the Four Corners Power Plant ("FCPP") by Intervenor-Defendant Arizona Public Service Company, (2) the renewal of certain right-of-ways for existing transmission lines, and (3) a 5,568-acre expansion of strip mining in the Navajo Mine's Pinabete area. (Doc. 1 at 4-5.) Federal Defendants' actions were predicated on a Biological Opinion issued by FWS in April 2015, which Plaintiffs characterize as a mistaken determination that the "proposed authorizations for continued operations of the [FCPP] and the Navajo Mine . . . will neither jeopardize the survival and recovery of, nor adversely modify designated critical habitat of the Colorado pikeminnow and razorback sucker, two endangered fish native to the San Juan River, in violation of the ESA." (Doc. 1 at 3.) Plaintiffs contend that remaining Federal Defendants' reliance on FWS' Biological Opinion violated the ESA and that Federal Defendants' subsequent Record of Decision and Final Environmental Impact Statement were issued in violation of NEPA. (Doc. 1 at 3-4.) This litigation followed.

In August 2016, Arizona Public Service Company ("APS")—on its own behalf and as operating agent for the FCPP—was allowed to intervene as of right as a party defendant. (Doc. 26.) Navajo Transitional Energy Company ("NTEC") filed a Limited Motion to Intervene (Doc. 31), which this Court granted on October 28, 2016. (Doc. 49.) Intervenor-Defendant NTEC subsequently filed a Motion to Dismiss pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure. (Doc. 50 at 2.) All parties, with the exception of Intervenor-Defendant APS (Doc. 58), oppose Intervenor-Defendant NTEC's Motion to Dismiss. (Docs. 56, 57.)

**II. Discussion**

Intervenor-Defendant NTEC contends that it is a required party under Rule 19 of the Federal Rules of Civil Procedure, that cannot be joined by virtue of its sovereign immunity, and that the present action should therefore be dismissed in equity and good conscience. (Doc. 50 at 1-2.) The Court agrees.

///

///

### A.     Required Party

"Rule 19 sets the framework for determining whether a party is required and indispensable." *Friends of Amador Cty. v. Salazar*, 554 F. App'x 562, 564 (9th Cir. 2014). First, the Court must determine whether Intervenor-Defendant NTEC is a "required party." Fed. R. Civ. P. 19(a)(1). In making this determination, the Court must decide: (1) if it can accord complete relief among the existing parties and (2) whether Intervenor-Defendant NTEC has a "legally protected interest" in the subject of the present litigation which would be impaired or impeded if it was not party to this suit. Fed. R. Civ. P. 19(a)(1). If either inquiry is answered in the affirmative, then Intervenor-Defendant NTEC is a required party "and must be joined." *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014). This inquiry "is a practical one and fact specific." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

A party is required under Rule 19 if it "claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B). The language of Rule 19 makes it clear that "the finding that a party is necessary to the action is predicated only on that party having a *claim* to an interest." *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) (emphasis in original). A legally protected interest need not be "property in the sense of the due process clause." *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023 (9th Cir. 2002). Yet, this interest must amount to "more than a financial stake and more than speculation about a future event." *Makah*, 910 F.2d at 558 (internal citations omitted).

Intervenor-Defendant NTEC satisfies the threshold for having a legally protected interest under Rule 19(a)(1)(B). Just as in *Kescoli v. Babbitt*, the retroactive relief Plaintiffs seek could directly affect the Navajo Nation (acting through its corporation, Intervenor-Defendant NTEC) by disrupting its "interests in their lease agreements and the ability to obtain the bargained-for royalties and jobs." 101 F.3d 1304, 1310 (9th Cir. 1996). If successful, Plaintiffs' challenges to Federal Defendants' actions—which the continued operation of Navajo Mine and Four Corners Power Plant are conditioned

upon—could simultaneously jeopardize the solvency of the Navajo Nation[1] and challenge the economic development strategies it has chosen to pursue. Such affronts to the Nation's sovereignty represent a legally protected interest under Rule 19.

"[A]n absent party's ability to protect its interests will not be impaired by its absence from the suit where its interests will be adequately represented by existing parties to the suit." *Alto v. Black*, 738 F.3d 1111, 1127 (9th Cir. 2013) (citing *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999)). Here, Plaintiffs and Federal Defendants contend that the United States can appropriately represent the interests of non-parties in this litigation without the presence of Intervenor-Defendant NTEC. (Docs. 56 at 3; 57 at 19-20.) Federal Defendants maintain that there is a shared common interest between Federal Defendants and all non-parties, including Intervenor-Defendant NTEC, "in having the analyses and approvals upheld." (Doc. 56 at 2.) The Court disagrees.

To discern if Federal Defendants adequately represent Intervenor-Defendant NTEC, the Court looks to: (1) "whether the interests of a present party to the suit are such it will undoubtedly make all of the absent party's arguments;" (2) "whether the party is capable of and willing to make such arguments;" and (3) "whether the absent party would offer any necessary element to the proceedings that the present parties would neglect." *Salt River Project Agric. Improvement & Power Dist.*, 672 F.3d 1176, 1180 (9th Cir. 2002) (internal citation omitted). Here, Federal Defendants are primarily concerned with being able to "defend their analyses and decisions in this litigation." (Doc. 56 at 2.) As discussed, Intervenor-Defendant NTEC's interests in the outcome of this case far exceed Federal Defendants' interest in "defending the validity of the government's

---

[1] The Navajo Nation formed Navajo Transitional Energy Company in 2013 for the purposes of purchasing the Navajo Mine from BHP Billiton for $85 million with a three-year loan. (Doc. 32 ¶ 9.) In 2016, NTEC obtained a new loan for $115 million, which it used to pay off the original note and to maintain working capital. (*Id*). This 2016 loan is secured by NTEC's assets, which includes Navajo Mine. (*Id*). Hence, if operations at the Mine were hindered, NTEC could possibly default on the 2016 loan and lose ownership of the Mine—a loss that would cost the Navajo Nation millions of dollars. (*Id*).

environmental compliance and subsequent approval of the leases, permits, and rights of way." (Doc. 56 at 9.) Presently, Federal Defendants and Intervenor-Defendant NTEC interests are aligned—both advocate for defending Federal Defendants' decisions which provide for the continued operation of the Navajo Mine and the FCPP—albeit for different reasons. Over the course of litigation, however, these different reasons "could lead to a later divergence of interests." *White*, 765 F.3d at 1027. If that were to occur, it is unlikely that Federal Defendants—in its effort to defend its decisions and processes—would assert the same arguments that Intervenor-Defendant NTEC would to protect its sizeable investments.

### B. Sovereign Immunity

Having determined that Intervenor-Defendant NTEC is a required party to the present litigation under Rule 19(a)(1), the Court must next consider whether it can be feasibly joined as a party. Given the sovereign immunity it enjoys as an "arm" of the Navajo Nation, Intervenor-Defendant NTEC cannot be joined.

"Indian tribes are 'domestic dependent nations' that exercise 'inherent sovereign authority.'" *Mich. v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2030 (2014) (internal citations omitted). One of the core aspects of such inherent sovereignty "is the common law immunity from suit traditionally enjoyed by sovereign powers." *Id.* (internal citations and quotation marks omitted). In *Bay Mills*, the United States Supreme Court reaffirmed the sovereign immunity of American Indian tribes, noting "we have time and again treated the 'doctrine of tribal immunity [as] settled law.'" 134 S. Ct. at 2030-31 (citing *Kiowa Tribe of Okla. v. Mfg. Tech, Inc.*, 523 U.S. 751, 756 (1998)). Tribal sovereign immunity can be diminished by congressional waiver or abrogation. *United States ex rel. Cain v. Salish Kootenai College, Inc.*, 862 F.3d 939, 943 (9th Cir. 2017). A tribe may also waive its own immunity, but such waiver will not be inferred and "is effective only if it is 'unequivocally expressed.'" *Quinault Indian Nation v. Pearson*, 2017 WL 3707898, at *2 (9th Cir. Aug. 29, 2017) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)).

"Tribal sovereign immunity not only protects tribes themselves, but also extends to arms of the tribe acting on behalf of the tribe." *White*, 765 F.3d at 1025 (internal citation omitted). Courts employ a multi-factor analysis when determining whether an entity of a tribe enjoys sovereign immunity as "an arm of the tribe" including: "(1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities." *Id.* (internal citation omitted).

Applying undisputed facts, it is clear that Intervenor-Defendant Navajo Transitional Energy Company enjoys sovereign immunity as an "arm" of the Navajo Nation. Established in 2013, NTEC is a wholly-owned Navajo corporation organized pursuant to Navajo law. (Doc. 32 ¶¶ 3-5.) NTEC was created by the Navajo Nation "to protect and promote the economic and financial interests of the Nation and the Navajo people while remaining dedicated to responsible management of the Nation's natural resources." (Doc. 32 ¶ 3.) Specifically, NTEC was formed so that the Nation could purchase the Navajo Mine from BHP Billiton, which it did in 2013. (Doc. 32 ¶ 9.)

NTEC is organized exclusively under Navajo law. (Doc. 32 ¶ 7.) The Navajo Nation's role in management includes representation by "a Member Representative Group consisting of five members of the Navajo Nation Council." (Doc. 32 ¶ 7.) The profits of NTEC are those of the Navajo Nation; distributions of net income are made to the Nation in accordance with NTEC's Formation Resolution and Operating Agreement. (Doc. 32 ¶ 8.) With regard to shared sovereign immunity, the Navajo Nation explicitly vested NTEC with sovereign immunity. A resolution by the Navajo Nation Council, dated October 24, 2013, reads: "The Navajo Nation is a sovereign, and as an arm and subordinate instrumentality of the Navajo Nation, the [Navajo Transitional Energy] Company must be provided all the protections, privileges, benefits, and authorities of its association and affiliation with a sovereign." (Doc. 32, Ex. 1 at 1.) NTEC's Operating Agreement further confirms that it was the Navajo Nation's intent that NTEC enjoy its

sovereign immunity. (Doc. 32, Ex. 1 at 36.) Given these undisputed facts, Intervenor-Defendant NTEC is an "arm of the tribe" for purposes of sovereign immunity.

### C. Indispensable Party

Intervenor-Defendant NTEC is a required party that cannot be joined because it enjoys sovereign immunity from suit. Accordingly, the Court must decide "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Determination of "whether a party is indispensable 'can only be determined in the context of particular litigation.'" *Am. Greyhound,* 305 F.3d at 1018 (internal citation omitted). This decision, however, is made considerably easier because Intervenor-Defendant has sovereign immunity as an "arm" of the Navajo Nation and a "wall of circuit authority" supports dismissal of the present action. *White*, 765 F.3d at 1028. When presented with similar circumstances, "virtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether a remedy is available, if the absent parties are Indian tribes invested with sovereign immunity." *Id.* (citing *Am. Greyhound*, 305 F.3d at 1015; *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002); *Manybeads v. United States*, 209 F.3d 1164 (9th Cir. 2000); *Clinton v. Babbitt*, 180 F.3d 1081 (9th Cir. 1999); *Kescoli v. Babbitt*, 101 F.3d 1304 (9th Cir. 1996); *McClendon v. United States*, 885 F.2d 627 (9th. Cir. 1989)).

### III. Conclusion

Intervenor-Defendant is a required party under Rule 19 of the Federal Rules of Civil Procedure because it has a protected interest in the subject of the present litigation that only it can adequately protect. As an arm of the Navajo Nation, however, Intervenor-Defendant NTEC enjoys sovereign immunity and since it has neither explicitly waived that immunity, nor has such immunity been abrogated or waived by Congress, it follows that Intervenor-Defendant NTEC cannot be joined. In equity and good conscience, the present case cannot continue without Intervenor-Defendant NTEC. Accordingly,

**IT IS ORDERED:**

1. That Intervenor-Defendant NTEC's Motion to Dismiss (Doc. 50) is **granted**;

2. That this action is **dismissed with prejudice** in its entirety;

3. That the Clerk of Court shall **terminate** this action; and

4. That the Clerk of Court shall enter judgment accordingly.

Dated this 11th day of September, 2017.

Honorable Steven P. Logan
United States District Judge